IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: |
| STOREE CONSTRUCTION CO.; PRISCILLA GUINN, individually; MATTHEW GUINN, individually; and PRISCILLA GUINN and MATTHEW GUINN on behalf of the decedent PHILLIP GUINN, | ) |
| Defendants. | ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

The Cincinnati Insurance Company ("CIC"), by and through the undersigned counsel, for its Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201 and 2022, and Rule 47 of the Federal Rules of Civil Procedure, states as follows:

**NATURE OF THE SUIT**

1. This is a declaratory judgment lawsuit brought pursuant to 28 U.S.C. §§ 2201, 2022, and Fed. R. Civ. P. 57 to determine CIC and Storee Construction Co.'s ("Storee") rights and obligations under a series of commercial general liability ("CGL") policies that CIC issued to Storee.

2. An actual and justifiable controversy exists between the parties. This action will resolve a dispute as to whether the CIC insurance policies provide coverage to Storee in connection with the underlying lawsuit titled *Priscilla Guinn and Matthew Guinn, Individually and on Behalf of Decedent Phillip Guinn v. Solo Cup Operating Corporation, et al.*, Case No.: 2531-CC00006, filed in the Circuit Court of Greene County, Missouri (the "Underlying Lawsuit").

## PARTIES, JURISDICTION, AND VENUE

3. Plaintiff the Cincinnati Insurance Company ("CIC") is a corporation incorporated under the laws of the State of Ohio, and having its principal place of business in Fairfield, Ohio. CIC is a citizen of Ohio and is domiciled in Ohio.

4. Storee Construction Co. ("Storee") is a corporation incorporated under the laws of the State of Missouri, having its principal place of business in Springfield, Missouri. Storee is a citizen of Missouri and is domiciled in Missouri.

5. Priscilla Guinn is a resident and citizen of the State of Missouri, as well as domiciled in Missouri.

6. Matthew Guinn is a resident and citizen of the State of Missouri, as well as domiciled in Missouri.

7. The Underlying Lawsuit is a wrongful death action in which Priscilla Guinn and Matthew Guinn, individually, and as representatives of the decedent Phillip Guinn (collectively, the "Underlying Plaintiffs") seek damages allegedly resulting from physical injury to and the eventual death of Phillip Guinn.

8. Phillip Guinn was, prior to his death, a resident and citizen of the State of Missouri, as well as domiciled in Missouri.

9. The amount in controversy of the Underlying Lawsuit is in excess of seventy-five thousand dollars ($75,000), exclusive of costs, interest, and attorney's fees.

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds seventy-five thousand dollars ($75,000) and there exists complete diversity of citizenship.

2

11. The Underlying Lawsuit was filed in Greene County, a county falling within this Federal District. The Underlying Lawsuit alleges conduct taking place within this Federal District.

12. Venue is proper under 28 U.S.C. § 1391(b)(2) because the events giving rise to this lawsuit occurred in this Federal District.

**BACKGROUND**

13. On January 3, 2025, the Underlying Plaintiffs filed the Petition in the Underlying Lawsuit (the "Underlying Petition"). A true and correct copy of the Underlying Petition is attached as **Exhibit A**.

14. Among the defendants named in the Underlying Lawsuit are Solo Cup Operating Corporation; Sweetheart Holdings, Inc.; and DART Container Corporation of Illinois, collectively referred to as the "Sweetheart Cup Defendants" in the Underlying Petition. (Ex. A ¶ 7).

15. The Underlying Petition alleges that the Sweetheart Cup Defendants owned and operated a manufacturing facility located at 1100 N. Glenstone Avenue, Springfield, Missouri (the "Facility"). (Ex. A ¶ 8).

16. The Underlying Petition alleges that Phillip Guinn was an employee of the Sweetheart Cup Defendants and worked at the Facility. (Ex. A ¶¶ 8, 10).

17. The Underlying Petition alleges that the Sweetheart Cup Defendants purchased, utilized, and disposed of the following chemicals: Trichloroethylene (TCE); 1,1,1-trichloroethane (TCA), Tetrachloroethylene/Perchloroethylene (PCE); 1,2-dichloroethylene (cis-, trans-, and mixed isomers); 1,1,1,2-tetrachloroethane; 1,1-dichloroethane; and Benzene. (Ex. A ¶ 38). The Underlying Petition refers to these chemicals collectively as "volatile organic chemicals", or "VOCs." (Ex. A ¶ 38).

18. The Underlying Petition alleges that "[t]hese VOCs are carcinogenic to humans by all routes of exposure and pose significant health hazards including risks of noncancer toxicity to the central nervous/neurologic system, kidney, liver, immune system, male reproductive system, and the developing embryo/fetus." (Ex. A ¶ 40).

19. The Underlying Petition alleges that the Sweetheart Cup Defendants retained Storee to store, bury, relocate, move or otherwise dispose of VOCs at the Facility. (Ex. A ¶¶ 15, 50).

20. The Underlying Petition alleges that Storee "negligently or improperly stored, buried, relocated, moved or otherwise disposed of VOCs, further contaminating the soil, groundwater, surface water, air and environment to which [Phillip Guinn] was exposed." (Ex. A ¶ 51).

21. The Underlying Petition alleges that groundwater sampling at the Facility consistently detected harmful levels of VOCs. (Ex. A ¶ 52).

22. The Underlying Petition alleges that the acts and omissions of Storee and the Sweetheart Cup Defendants "caused contamination of soil, groundwater, and surface water, exposing [Phillip Guinn] to VOCs through inhalation, dermal contact, ingestion, and vapor intrusion, which directly caused or directly contributed to cause his illness and eventual death." (Ex. A ¶ 53).

23. The Underlying Petition alleges that, as a "direct and proximate result" of Defendants' conduct, Phillip Guinn developed Parkinson's disease, which permanently and progressively disabled him and ultimately led to his death on January 5, 2022. (Ex. A ¶ 63).

4

24. In the Underlying Petition, the Underlying Plaintiffs seek damages they allege result from Phillip Guinn's death and his pain and suffering between the time of his injury and the time of his death. (Ex. A ¶¶ 64-65).

25. The Underlying Petition contains nine counts. Three of these nine counts are brought against Storee. (Ex. A).

26. Count 4, styled as Fraudulent Concealment/Misrepresentation, is brought against all Defendants in the Underlying Lawsuit. (Ex. A ¶¶ 94-103).

27. Count 4 alleges that Storee "knew or should have known" of the adverse health effects from exposure to the VOCs. (Ex. A ¶ 95).

28. Count 4 alleges that, even though Storee "knew of the potential for adverse health effects from exposure to VOCs," Storee "intentionally and maliciously chose to conceal these facts and/or misrepresented these facts." (Ex. A ¶ 96).

29. Count 4 alleges that Phillip Guinn was injured as a direct and proximate result of Storee's "concealment/misrepresentation." (Ex. A ¶ 103).

30. Count 8, styled as Negligence, is brought against only Storee.

31. Count 8 alleges that Phillip Guinn's injuries were caused by, among other things, Storee failing to appropriately dispose of or otherwise store the VOCs; failing to prevent hazardous waste from migrating into the groundwater, soil, or environment; contributing to the spread of the VOC contamination; and failing to adequately warn of the VOC contamination. (Ex. A ¶¶ 129-30).

32. Count 9, brought against all Defendants in the Underlying Lawsuit, is styled as Wrongful Death, Pursuant to R.S.M.O. § 537.080.

33. Count 9 alleges that Phillip Guinn suffered pain and died as a direct and proximate result of the Underlying Lawsuit's named Defendants' acts and omissions. (Ex. A ¶¶ 132-33).

## THE CIC POLICIES

34. Storee has tendered coverage to CIC under a series of CGL policies that CIC issued to Storee.

35. CIC issued Storee a CGL policy, Policy No. CPA0728560, with a policy period from November 4, 2000, to November 4, 2006 (the "First Policy").

36. CIC has been unable to locate a copy of the First Policy.

37. Storee has been unable to locate a copy of the First Policy.

38. Storee engaged the policy-finding service PolicyFind to locate a copy of the First Policy.

39. PolicyFind was unable to locate a copy of the First Policy.

40. CIC issued Storee a CGL policy, Policy No. CPP 081 29 39, with a policy period from November 4, 2006 to November 4, 2012 (the "Second Policy"). A true and correct copy of the Second Policy with a policy period of November 4, 2006 to November 4, 2009, is incorporated as if fully set forth and is attached as **Exhibit B.**

41. The first policy period of the Second Policy was initially November 4, 2006, to November 4, 2007; CIC issued a General Change Endorsement extending the policy period until November 4, 2009. (Ex. B, CIC0032, CIC0150).

42. The Second Policy was renewed with a policy period of November 4, 2009 to November 4, 2012. A true and correct copy of this renewal policy is incorporated as if fully set forth and is attached as **Exhibit C**.

6

43. CIC issued Storee a CGL policy, Policy No. EPP 016 70 99, with a policy period from November 4, 2012 to November 4, 2015 (the "Third Policy"). A true and correct copy of the Third Policy is incorporated as if fully set forth and is attached as **Exhibit D**.

44. CIC issued Storee a CGL policy, Policy No. EPP 036 95 33, with a policy period from November 4, 2015 to November 4, 2022 (the "Fourth Policy"). A true and correct copy of the Fourth Policy, with a policy period from November 4, 2015 to November 4, 2016 is incorporated as if fully set forth and is attached as **Exhibit E**.

45. The Fourth Policy was subsequently renewed, with a policy period from November 4, 2016 to November 4, 2019. A true and correct copy of this renewal is incorporated as if fully set forth and is attached as **Exhibit F.**

46. The Fourth Policy was subsequently renewed again, with a policy period from November 4, 2019 to November 4, 2022. A true and correct copy of this renewal is attached as **Exhibit G.**

47. The Second, Third, and Fourth Policies had the CGL Coverage Form GA 101 12 04. (Ex. B, CIC0039-58; Ex. C, CIC0172-91; Ex. D, CIC0307-26; Ex. E, CIC0456-75; Ex. F, CIC0607-26; Ex G, CIC0847-66).

48. The coverage provided by the First Policy, Second Policy, Third Policy, and Fourth Policy (collectively referred to as the "CIC Policies"), including all extensions and renewals, are subject to their respective terms, conditions, endorsements, limitations, and exclusions.

49. The CGL Coverage Form GA 101 12 04 has the following insuring agreement:

*SECTION I – COVERAGES COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY*

*1. Insuring Agreement*

   *a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this*

> *insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:*
>
> > *(1) The amount we will pay for damages is limited as described in **SECTION III - LIMITS OF INSURANCE;** and*
> >
> > *(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY; SECTION I - COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY;** or medical expenses under **SECTION I - COVERAGES, COVERAGE C. MEDICAL PAYMENTS.***
>
> *No other obligation or liability to pay sums or perform acts or services is covered unless expressly provided for under **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.***
>
> ***b.** This insurance applies to "bodily injury" and "property damage" only if: **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" . . . .*

(Ex. B, CIC0039; Ex C, CIC0172; Ex. D, CIC0307; Ex. E, CIC0456; Ex. F, CIC0607; Ex. G, CIC0847).

50.     The CGL Coverage Form GA 101 12 04 has the following definition of an "occurrence":

> *"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

(Ex. B, CIC0057; Ex. C, CIC0190; Ex. D, CIC0325; Ex. E, CIC0474; Ex. F, CIC0625; Ex. G, CIC0865).

51.     The CGL Coverage Form GA 101 12 04 contains the following exclusion (the "Expected or Intended Injury Exclusion"):

> ***2. Exclusions***
>
> *This insurance does not apply to:*

8

### a. Expected or Intended Injury

*"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured, even if the injury or damage is of a different degree or type than actually expected or intended. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.*

(Ex. B, CIC0040; Ex. C, CIC0173; Ex. D, CIC0308; Ex. E, CIC0457; Ex. F, CIC0608; Ex. G, CIC0848).

52. The CGL Coverage Form GA 101 12 04 contains the following exclusion (the "Pollutant Exclusion"), which states in pertinent part:

### 2. Exclusions

*This insurance does not apply to:*

\*   \*   \*

### f. Pollutant

*(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or emission of "pollutants":*

\*   \*   \*

*(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;*
*(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:*
  *1) Any insured; or*
  *2) Any person or organization for whom you may be legally responsible;*

\*   \*   \*

*(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".*

\*   \*   \*

9

(Ex. B, CIC0040-42; Ex. C, CIC0173-75; Ex. D, CIC0308-10; Ex. E, CIC0457-59; Ex. F, CIC0608-10; Ex. G, CIC0848-50).

53. The CGL Coverage Form GA 101 12 04 contains the following definition of "pollutant":

> *"Pollutant" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, petroleum, petroleum products and petroleum by-products, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" include but are not limited to substances which are generally recognized in industry or government to be harmful or toxic to persons, property or the environment regardless of whether the injury or damage is caused directly or indirectly by the "pollutants" and whether:*
>
> **a.** *The insured is regularly or otherwise engaged in activities which taint or degrade the environment; or*
> **b.** *The insured uses, generates or produces the "pollutant".*

(Ex. B, CIC0057; Ex. C, CIC0190; Ex. D, CIC0325; Ex. E, CIC0474; Ex. F, CIC0625; Ex. G, CIC0865).

54. In the CIC Policies from 2009 and later, this "pollutants" definition is amended by the Missouri Changes Endorsement (Form GA 4287 MO 08 08) to include the following:

> *The definition of "pollutants" applies whether or not such irritant or contaminant has any function in or on your business, operations, premises, site or location.*

(Ex. C, CIC0197; Ex. D, CIC0359; Ex. E, CIC0510; Ex. F, CIC0663; Ex. G, CIC0928).

## COUNT I: DECLARATORY JUDGMENT

55. Paragraphs 1 through 54 are hereby incorporated by reference.

56. The CIC Policies' Pollutant Exclusion bars coverage for damages arising out of the discharge, dispersal, seepage, migration, release, escape, or emission of "pollutants" that were transported, handled, stored, treated, disposed of, or processed as waste by any insured.

10

57. The Underlying Lawsuit seeks damages allegedly caused by the discharge, dispersal, seepage, migration, release, escape, or emission of the VOCs, which Storee allegedly stored, transported, and/or disposed as waste.

58. The VOCs are "pollutants" as that term is defined by the CIC Policies.

59. The Pollutant Exclusion in the CIC Policies applies here.

60. Therefore, the CIC Policies' Pollutant Exclusion bars coverage for the Underlying Lawsuit.

61. Because the Pollutant Exclusion bars coverage for the Underlying Lawsuit, CIC has no duty to defend or indemnify Storee for the Underlying Lawsuit.

62. Coverage A of the CIC Policies' CGL coverage form only provides coverage for damages for "bodily injury" when that "bodily injury" is caused by an "occurrence."

63. The Underlying Petition alleges that Storee knew that exposure to the VOCs risked adverse health effects, but that Storee intentionally and maliciously concealed and/or misrepresented this risk.

64. The Underlying Petition alleges that Phillip Guinn was injured as a direct and proximate result of this concealment and/or misrepresentation.

65. The Underlying Petition does not allege that Phillip Guinn's injuries resulted from an "occurrence" as the term is defined pursuant to the CIC Policies.

66. Because the Underlying Petition does not allege that Phillip Guinn's injuries resulted from an "occurrence", CIC has no duty to defend or indemnify Storee in connection with the Underlying Lawsuit.

11

67. The CIC Policies' Expected or Intended Injury Exclusion bars coverage for "bodily injury" that may reasonably be expected to result from the insured's intentional acts, or which is in fact expected or intended by the insured.

68. The Underlying Petition alleges that Storee knew that exposure to the VOCs risked adverse health effects, but that Storee intentionally and maliciously concealed and/or misrepresented this risk.

69. The Underlying Petition alleges that Phillip Guinn was injured as a direct and proximate result of this concealment and/or misrepresentation.

70. The Underlying Petition seeks damages for Phillip Guinn's injuries, which it alleges may reasonably be expected to result from Storee's intentional acts, or are in fact expected or intended by Storee.

71. The Expected or Intended Injury Exclusion therefore bars coverage for the Underlying Petition.

72. Because the Expected or Intended Injury Exclusion applies here and thus bars coverage for the Underlying Petition, CIC has no duty to defend or indemnify Storee in connection with the Underlying Lawsuit under the CIC Policies.

73. Based on the allegations of the Underlying Petition and information ascertained in its pre- and post-suit investigation, the CIC Policies' Pollutant Exclusion and Expected or Intended Injury Exclusion apply to preclude coverage, or potential coverage, under the CIC Policies.

74. Further, based on the information gathered during CIC's investigation and the allegations in the Underlying Petition, the bodily injury and subsequent death of Phillip Guinn were not caused by an "occurrence" pursuant to the CIC Policies' definitions as well as terms,

conditions, provisions, limitations, endorsements, and exclusions, thus there is no indemnity or defense owed by CIC.

75. There exists an actual controversy of a judiciable nature between the parties concerning the rights and obligations of the parties to the insurance contracts.

76. This matter is ripe because there is a dispute regarding CIC's exposure or duties in the settlement and/or adjudication of this matter.

77. CIC has complied with all terms, conditions, and provisions of the insurance contracts.

78. By virtue of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations, and liabilities that exist between the parties in connection to the aforementioned CIC Policies.

## **JURY TRIAL DEMAND**

79. Pursuant to Fed. R. Civ. P. 38(b) Cincinnati hereby demands that this case be tried by a jury.

WHEREFORE, Plaintiff The Cincinnati Insurance Company prays that this Court enter judgment in its favor and against the Defendants, declaring:

A. That The Cincinnati Insurance Company had/has no duty to defend Storee Construction Co. pursuant to the CIC Policies with respect to any claims asserted or that could have been asserted in the Underlying Lawsuit, or the losses claimed therein;

B. That The Cincinnati Insurance Company has no duty to indemnify or provide any other coverage to Storee Construction Co. with respect to any claims, loss, or damages in the Underlying Lawsuit;

C. That The Cincinnati Insurance Company has no duty to contribute any manner or amount to any settlement or proposed settlement of the Underlying Lawsuit; and

D. For such other and further relief as the Court deems just, proper, and equitable.

**Respectfully Submitted,**

LITCHFIELD CAVO, LLP

By: */s/ Michael L. Brown*
Michael L. Brown    MO #55732
Allison Kleinow    MO #69175
10401 Holmes Rd., Suite 220
Kansas City, MO 64131
(816) 648-1400 Phone
(816) 648-1401 Fax
brown@litchfieldcavo.com
Kleinow@litchfieldcavo.com
**ATTORNEYS FOR THE CINCINNATI INSURANCE COMPANY**